## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| HONEYWELL INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> NARCO ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, <br><br> Defendant. | No. 8:21-mc-00157-CEH-AAS <br><br> Original Proceeding: <br> *Honeywell International Inc. v. North American Refractories Company Asbestos Personal Injury Settlement Trust*, Adv. Proc. No. 21-2097 (Bankr. W.D. Pa.) |

## HONEYWELL INTERNATIONAL INC.'S COMBINED MOTIONS TO COMPEL, TRANSFER, OR EXPEDITE AND OMNIBUS MEMORANDUM OF LAW IN SUPPORT THEREOF AND OPPOSITION TO VINSON LAW'S MOTION TO QUASH

Honeywell International Inc. ("Honeywell") moves as follows: (A) pursuant to Rule 45(g) and Rule 37(a)(1) of the Federal Rules of Civil Procedure to compel compliance with the "Subpoena" (Ex. 1)[1] issued to Vinson Law, P.A. ("Vinson") from the United States Bankruptcy Court for the Western District of Pennsylvania in connection with *Honeywell International Inc. v. North American Refractories Company Asbestos Personal Injury Settlement Trust*, Adv. Proc. No. 21-2097 (Bankr. W.D. Pa.) (the "2021 NARCO Litigation"); (B) pursuant to Rule 45(f) to transfer its Motion to Compel and Vinson's Objection to and Motion to Quash Subpoena and Objection to Transfer (Dkt. 1, "Motion to Quash") to Bankruptcy

---

[1] References to numbered exhibits refer to exhibits to the Declaration of Guyon H. Knight ("Knight Decl."), filed concurrently herewith. References to lettered exhibits refer to exhibits to the Declaration of Yelena Bekker ("Bekker Decl."), filed concurrently herewith.

Judge Thomas P. Agresti in the United States Bankruptcy Court for the Western District of Pennsylvania, who is presiding over the 2021 NARCO Litigation; and (C) to expedite the discovery from Vinson.

In opposition to Vinson's Motion to Quash, and in support of its motions above, Honeywell submits this omnibus memorandum of law.

## PRELIMINARY STATEMENT

Honeywell's Subpoena seeks documents directly relevant to its claims against the NARCO Trust (the "Trust") in the 2021 NARCO Litigation. Vinson's Motion to Quash does not make any substantive challenge to the relevance of the Subpoena. Rather, Vinson points this Court to a pending motion that the Trust made in the case before Judge Agresti, which seeks a protective order to block the subpoenas Honeywell served on relevance grounds. That this Subpoena is already before Judge Agresti on the Trust's Motion is one of the bases for asking this Court to transfer Honeywell's Motion to Compel to Judge Agresti as well, as he is best situated to determine and then weigh the relevance of the subpoenaed documents against the alleged burden of production by Vinson. Should this Court decide to retain this matter, it should reject the three arguments Vinson advances in support of its Motion to Quash, as Vinson simply misstates the law and the facts.

First, Vinson argues that confidentiality obligations prevent it from complying with a lawful subpoena. But the ethical rule Vinson invokes applies only "in situations *other than those* where evidence is sought from the lawyer *through compulsion of law.*" Fla. R. Prof'l Conduct 4-1.6, cmt. (emphases added). As a

result, "[w]hen under compulsion of a subpoena, the lawyer acts ethically by *complying with the subpoena* as to any information sought that is not privileged." Fla. Bar Ethics Op. 10-3, 2011 WL 6842635, at *3 (Feb. 1, 2011) (emphasis added) (cited by Mem. at 5). Vinson also says that it "believes that it is *possible* that *some* of the documents requested by the Subpoena *may* be subject to confidentiality requirements imposed by the asbestos trusts to which it assisted its clients in submitting claims." Mem. at 8 (emphases added). Even if the Court credits this possibility, Vinson never explains why it cannot produce its *own* documents simply because it previously submitted those same documents to another trust.

Second, Vinson argues that the Subpoena is unduly burdensome because it would require 262.5 hours to collect and produce responsive documents. Vinson notably does not support this argument with sworn declarations, and the Court should reject it for this reason alone. Honeywell has offered numerous ways to reduce any burden on Vinson—Vinson simply refused to accept these offers before filing this Motion. In any event, this burden is hardly "undue" under the circumstances. Vinson has collected millions of dollars from the Trust and Vinson's receipt of payment from the Trust in connection with its submission of form affidavits is what prompted this Subpoena. Vinson is not a mere stranger to the 2021 NARCO Litigation. It is a direct beneficiary of the payments based on form affidavits that are one of the central issues that will be litigated at the May 2022 trial in this action.

Third, Vinson is simply wrong in claiming that Honeywell already has the

documents that its Subpoena seeks. Neither Honeywell nor the Trust have the exposure submissions that Vinson claimants submitted to *other* asbestos trusts. Additionally, neither have the exposure submissions Vinson's clients made in the tort system generally. Vinson argues (in an unsworn statement) that only 24 of the 200 claimants identified in the Subpoena have litigation, and that 18 of those have sued Honeywell concerning their alleged exposure to a different product.[2] Mem. at 10-11. Honeywell does not have access to litigation materials for *other* cases those two claimants may have brought, and Honeywell can only obtain these documents through a subpoena.

Honeywell is entitled to the discovery is seeks through the Subpoena. The Court should therefore transfer these Motions to the Bankruptcy Court for the Western District of Pennsylvania so the judge presiding over the 2021 NARCO Litigation can consider them with a motion for a protective order that has already been filed and is set for argument on December 13. In the alternative, the Court should Vinson's Motion to Quash and grant Honeywell's Motion to Compel.

## BACKGROUND

1.      The North American Refractories Company ("NARCO") Asbestos Personal Injury Settlement Trust was created some years ago as part of the court-approved NARCO plan of reorganization to pay claims of those injured by NARCO asbestos-containing products. Ex. 2 ("Compl.") ¶ 2. The Trust is only permitted to

---

[2] Honeywell's records show that to be inaccurate: just two of the named claimants has sued Honeywell. Bekker Decl. ¶ 10.

pay claims, however, if they are supported by "competent" and "credible" evidence that the claimants were exposed to asbestos products manufactured by NARCO. *Id.* ¶ 62. Honeywell—which was "effectively [] the parent of NARCO" from 1979 to 1986—has a unique and continuing interest in ensuring that the Trust follows these directives—Honeywell funds the Trust on an evergreen basis. *Id.* ¶¶ 2, 41. Honeywell filed the 2021 NARCO Litigation to protect this interest and to stop the Trust from paying millions of dollars of claims to Vinson and other firms based on "form" affidavits that are not "competent" or "credible" evidence. *Id.* ¶¶ 1, 214-22.

2.      In the last two years, the Trust has paid Vinson's clients $2.1 million—making Vinson the seventh-largest recipient of payments from the Trust over that time period. Declaration of Yelena Bekker ("Bekker Decl.") ¶¶ 4-5. Vinson has received these payments in reliance on form affidavits that the firm submitted on behalf of hundreds of claimants claiming exposure to asbestos-containing products manufactured by NARCO. A form affidavit uses the same formulaic, boilerplate language to describe multiple claimants' exposures—and recollections of that exposure—to NARCO's asbestos-containing products. *Id.* ¶ 89.

3.      Exhibits A, B, and C are examples of form affidavits that Vinson submitted to the Trust on behalf of three separate claimants who worked in three separate industries at job sites located in three separate states. These claimants had nothing in common apart from the fact that Vinson represented them. One worked as an electrician in the utilities industry in Santa Barbara, California. Ex. A, ¶ 3. The other worked in maintenance at a telephone company in Fort Worth,

Texas. Ex. B, ¶ 3. And, the third worked as a plumber and laborer at a military base in Montgomery, Alabama. Ex. C, ¶ 3. Yet, despite these differences, each of these claimants signed an affidavit, under oath, which used identical language to describe identical exposures to the very same NARCO asbestos-containing product and identical recollections of those exposures.

4.     Specifically, each signed the same form affidavit, stating: "We knew this insulating cement was NARCO Stazon because we called it that. We knew it contained asbestos because we referred to it as asbestos." Ex. A, ¶ 4; Ex. B, ¶ 4; Ex. C, ¶ 4. Their form affidavits go on to attest, also identically, to the same job responsibility and method of exposure (despite their differing occupations in different industries) :

> In order to assemble, install, repair and/or maintain the systems and structures such as panels, we had to cut off the asbestos-containing NARCO Stazon insulating cement. To reapply it, we poured it in a bucket and mixed it with water. These processes made asbestos dust go airborne. When we swept up after this work, asbestos dust went airborne as well. (Ex. A, ¶ 6; Ex. B, ¶ 6; Ex. C, ¶ 6.)

5.     The Complaint alleges that form affidavits such as these are not "credible" or "competent" evidence of exposure to a NARCO asbestos-containing product. Compl. ¶¶ 89-95, 100-06. As the Complaint alleges, it is not credible that hundreds (and in some cases thousands) of claimants represented by the same law firm—working at different sites, in different jobs, in different industries, and in different time periods—were exposed to NARCO asbestos-containing products in the precisely the same manner and all had the very same recollection of that

exposure (from as much as fifty years ago) as their form affidavits claim[3] *Id.* ¶ 90.

6.     The 2021 NARCO Litigation is the *second* litigation against the Trust that Honeywell has brought addressed to the Trust's policy of paying claimants who rely on form affidavits. In 2015, Honeywell sought a preliminary injunction against the Trust before the same Judge that is presiding over the current litigation. Honeywell sought to enjoin, among other things, the Trust's payment on form affidavits. *Id.* ¶ 95. After some encouragement from Judge Agresti, the Trust "voluntary[ily] agree[d] to stop accepting … 'form' affidavits as sufficient to support a claim." *In re NARCO*, 542 B.R. 350, 356 (Bankr. W.D. Pa. 2015). Several months later, the Trust published directives to its claims processor memorializing the new prohibition and stating that form affidavits present "competence and/or credibility concerns." Compl. ¶ 108. The Trust's general counsel later acknowledged in writing that the concern with form affidavits is that clients "blindly will sign" them even if they do not have the recollection that the boilerplate exposure language attributes to them. *Id.* ¶ 104.

7.     Honeywell was forced to initiate the pending litigation—the 2021 NARCO Litigation—in part because the Trust reversed its form policy: it reverted to allowing form affidavits. *Id.* ¶ 113. One of the largest beneficiaries of this stunning reversal has been Vinson, whose claimants were paid over $2.1 million in the last two years alone based on the very same type of form affidavits that the

---

[3] The Complaint also alleges that the Trust inappropriate relies on "check-the-box" affidavits (*e.g.*, Compl. ¶¶ 96-111), but despite Vinson's suggestions (Mem. at 6, 10, 12), the Subpoena to Vinson is limited to claimants who have submitted *form* affidavits. Bekker Decl. ¶ 9.

Trust previously would not credit as credible or competent. Bekker Decl. ¶ 4. The Trust made this policy reversal despite Honeywell's having produced evidence to the Trust—from an asbestos litigation relating to "Bendix" brake products in which Honeywell is a defendant—showing that many NARCO claimants filed sworn statements in that litigation where they failed to claim any exposure to NARCO asbestos-containing products despite being asked for all other asbestos exposures and despite these claimants' listing other asbestos manufacturers and other brand names. Compl. ¶¶ 118, 141-50. The submission of inaccurate exposure evidence like this is, according to the Department of Justice, a problem being faced in the tort and asbestos trust system generally. *See* Press Release, Dep't of Justice, Justice Department Files Statement of Interest Urging Transparency in the Compensation of Asbestos Claims (Dec. 28, 2020) ("'In recent years, numerous courts and commentators have recognized that many asbestos claims are based on inaccurate or even fraudulent information .... That lack of transparency in the compensation of asbestos claims has been a *significant problem*.'") (emphasis added), *available at* https://tinyurl.com/DOJAsbestos.

8.      Honeywell's new Complaint asks the Court to "declare that form affidavits" violate the Trust's governing documents, and to "enjoin the Trust from accepting them as credible and competent evidence of exposure," in part based on evidence that Honeywell unearthed showing numerous instances where form affidavits submitted to the Trust were contradicted by other exposure claims the same claimants made in other venues. Compl. ¶ 222. The evidence sought by this

Subpoena seeks to further develop this evidence to help prove that form affidavits are not credible or reliable. Evidence of inconsistent exposure allegations made to other trusts or to other adversaries in the tort system will obviously undermine the credibility of Vinson's one-size-fits-all form affidavits.

9.     The Subpoena does not seek other tort and trust filings of all Vinson claimants, or even all of those that were paid by the Trust. Rather, the Subpoena seeks this information for a representative *subset* of 200 Vinson claimants whom the Trust paid based on their form affidavits. Ex. 1 at Sched. C.

10.     Even though the subset of 200 claimants requested by the Subpoena represents only a portion of the claims Vinson has submitted to the Trust, Honeywell has offered to limit the Subpoena to just 65 claimants, which is a *two-thirds* reduction of the number of claimants covered by the Subpoena. *See* Bekker Decl. ¶ 3; Knight Decl. ¶ 5.

11.     The Subpoena also seeks the documents that Vinson provided to the Trust's auditor, whom the Trust has indicated will testify at trial, presumably to defend its audits of firms like Vinson. Honeywell needs to obtain the documents that Vinson has given to the auditor to cross-examine the auditor. Under Trust policies, those documents are not retained by the Trust or its auditor but are instead returned to the audited firm. NARCO Trust Claims Audit Program, ¶ IV, *available at* https://tinyurl.com/NARCOAudit.

12.     The Subpoena that was served on Vinson and is the subject of this Motion is similar to eleven other subpoenas that Honeywell recently served on

eleven other law firms that have submitted form affidavits to the Trust to support claimed exposure to NARCO asbestos-containing product.

13.    In response to those Subpoenas, the Trust made a Motion before Judge Agresti for a Protective Order to quash all of the subpoenas, including this one, on the grounds that the subpoenaed documents are not relevant. To avoid inconsistent rulings and because of Judge Agresti's long history with the two related Honeywell litigations, Honeywell also brings a Motion pursuant to Rule 45(f) to Transfer this Motion to Compel to Judge Agresti. Honeywell respectfully requests that this Court consider both this Motion to Compel and the Motion to Transfer on an expedited basis because the deadline to exchange expert reports in this case is February 9, 2021 and Honeywell will need time to process and review the documents to be produced by Vinson.

WHEREFORE, Honeywell respectfully requests that this Court grant Honeywell's Motion to Expedite and enter an Order transferring Honeywell's Motion to Compel and Vinson's Motion to Quash to Judge Agresti in the United States Bankruptcy Court for the Western District of Pennsylvania; in the alternative, Honeywell respectfully requests that this Court grant Honeywell's Motion to Compel and deny Vinson's Motion to Quash.

## MEMORANDUM OF LAW

I.    **LEGAL STANDARD**

### A.    **Motion To Compel & Motion To Quash**

"The scope of discovery under a subpoena issued pursuant to Rule 45 is the

same as the scope of discovery under Rule 26."[4] *Rodgers v. Herbalife Int'l of Am., Inc.*, 2020 WL 263667, at *1 (M.D. Fla. Jan. 17, 2020). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). "Relevance in the context of discovery has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (internal quotation marks omitted).

"The party seeking to quash a subpoena bears the burden of establishing at least one of the requirements articulated under Rule 45(d)(3)," which includes subjecting the subpoenaed "person to undue burden." *Malibu Media, LLC v. Doe*, 2015 WL 574274, at *3 (M.D. Fla. Feb. 11, 2015); Fed. R. Civ. P. 45(d)(3)(A) (iv). "With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Am. Airlines, Inc. v. In Charge Mktg., Inc.*, 2012 WL 2116349, at *2 (M.D. Fla. June 11, 2012) (internal quotation marks and citation omitted). "Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Strike 3 Holdings, LLC v. Doe*, 2019 WL 13064729, at *2 (M.D. Fla.

---

[4] Although the Subpoena was issued in a bankruptcy adversary proceeding, Rules 26 and 45 still govern its scope and enforcement. *See* Fed. R. Bankr. P. 7026 (making Rule 26 applicable in adversary proceedings); Fed. R. Bankr. P. 9016 (making Rule 45 applicable in bankruptcy cases).

Oct. 31, 2019) (internal quotation marks and citation omitted).

    **B.**    **Motion To Transfer**

    Rule 45 allows a court to transfer motions to enforce a subpoena to the court that issued the subpoena "if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). To determine if exceptional circumstances exist, courts consider factors such as the "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *In re Subpoena Upon NeJame Law, P.A.*, 2016 WL 1599831, at \*6 (M.D. Fla. Apr. 21, 2016) (citing *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). These factors ultimately go to three key issues: "(1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether ... the issuing court is in the best position to rule on the motion to compel." *In re Braden*, 344 F. Supp. 3d 83, 90 (D.D.C. 2018); *see also Royal Crest Dairy, Inc. v. Cont'l Western Ins. Co.*, 2020 WL 8996580, at \*2 (M.D. Fla. May 19, 2020) (granting transfer in part because issuing court "better positioned to make decisions on relevancy" and transfer will "help avoid inconsistent rulings"). Transfer is appropriate where "such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Royal Crest*, 2020 WL 8996580, at \*1 (quoting Fed. R. Civ. P. 45, adv. comm. notes).[5]

---

[5] A magistrate judge has "full authority" to grant a motion to transfer, which "is a non-dispositive

## II.   THE REQUESTED DOCUMENTS ARE RELEVANT AND UNAVAILABLE TO HONEYWELL

### A.   Subpoena Requests 1 and 2

These Requests seek specific documents that certain identified Vinson claimants submitted to other trusts or exchanged with their adversaries in litigation. Courts around the country have repeatedly held that this kind of information is a proper subject of discovery. *See, e.g.*, *Sheppard v. Liberty Mut. Ins. Co.*, 2017 WL 3184 70, at *3 (E.D. La. Jan. 23, 2017) (denying motion to quash subpoena in part and holding that "all documents that [claimant] submitted to [asbestos] bankruptcy trusts, including claim forms, supporting documentation, and supplemental information are discoverable"); *Willis v. Buffalo Pumps, Inc.*, 2014 WL 2458247, at *1 (S.D. Cal. June 2, 2014) (denying motion to quash subpoena that sought individual claimant's data); *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v Porter*, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2012) (same).

So too here, the documents sought by these Requests are directly relevant to Honeywell's claims in the 2021 NARCO Litigation. These Requests seek documents to help demonstrate the lack of credibility of Vinson's form affidavits and to support Honeywell's claim that the Trust should not pay Vinson claimants relying on form affidavits. The Complaint squarely addresses the credibility of form affidavits submitted by firms like Vinson and discusses at length Honeywell's findings that many form affidavits are contradicted by exposure allegations made

matter." *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 517 (S.D. Fla. 2021) (internal quotation marks omitted); *see also, e.g.*, *In re Early*, 2021 WL 2636020, at *1 n.1 (N.D. Ga. Apr. 20, 2021) (same).

by the same claimants (using the same firms) in other venues. Compl. ¶¶ 92-95, 144-49. The identical boilerplate exposure claims being made in the form exposure affidavits submitted to the NARCO Trust are inherently suspect.

Obtaining further proof of Vinson's unreliable form affidavits is clearly "relevant to [Honeywell's] claim" in Count 1 of the Complaint, which seeks a declaration and injunction that form affidavits submitted by Vinson and other firms are not credible or competent. Fed. R. Civ. P. 26(b)(1); *see* Compl. ¶ 222; *see also id.*, Prayer for Relief ¶ 2. The subpoenaed documents thus easily satisfy the "broadly" "construed" standard of relevance that applies to a discovery request. *Akridge*, 1 F.4th at 1276 (internal quotation marks omitted).

### B.    Subpoena Request 3

Request 3 seeks information that was submitted to the Trust's auditor, who the Trust has indicated will testify at trial, presumably to defend its audits of Vinson and other firms and its findings. Ex. 1 at Sched A. Honeywell needs these documents from Vinson (as opposed to the auditor) because the auditor returned to Vinson the documents it received from it, per Trust audit procedures that provide for the auditor to return the documents (without retaining a copy) to the audited firm on the completion of the audit. *See* NARCO Trust Claims Audit Program, ¶ IV, *available at* https://tinyurl.com/NARCOAudit.

### C.    Honeywell Can Only Obtain The Documents Via Subpoena

In addition to being relevant, Honeywell does not have access to the documents sought by the Subpoena. Request 2 is limited to documents that Vinson

has submitted to *other* asbestos trusts, not the NARCO Trust. Ex. 1 at Sched. A, ¶ 2.[6] As a result, these documents are not in the possession of any party to the 2021 NARCO Litigation, and Honeywell can only obtain them through a third-party subpoena. Request 1 is limited to documents exchanged in tort litigation, and Honeywell does not know what litigation Vinson may have commenced for its clients. Vinson argues (in an unsworn statement) that only 24 of the clients identified in the Subpoena have litigation, and 18 of those have sued Honeywell. Mem. at 10-11. Honeywell's own records show that it may have records from litigation involving Bendix for a maximum of just two out of the 200 claimants identified in the Subpoena. Bekker Decl. ¶ 10. And, even for those two claims, Honeywell does not have access to litigation materials for *other* cases these two claimants may have brought, and Honeywell can only obtain these documents through a subpoena. Finally, as mentioned above, Honeywell does not have access to the documents that Vinson gave to Mazars (sought by Request 3), as those were required to be returned to Vinson under the relevant audit procedures. NARCO Trust Claims Audit Program, ¶ IV, *available at* https://tinyurl.com/NARCOAudit.

## III.   VINSON'S CONFIDENTIALITY ARGUMENTS LACK MERIT

Rather than challenge the Subpoena on relevance grounds, Vinson's lead argument is that the Subpoena should be quashed because it seeks confidential

---

[6] Vinson complains that it was unaware the Subpoena does not seek documents submitted to the Trust. Mem. at 10. But the Subpoena plainly requests documents submitted to "any Settlement Trust," while using a separate defined term to refer to the Trust. Ex. 1 at Sched. A, ¶ 2 & Sched. B, ¶¶ 10-11. If Vinson had questions about the scope of the Subpoena, it easily could have resolved them by responding to the repeated communications from Honeywell's counsel. Knight Decl. ¶ 2.

documents. Vinson is wrong.

First, Vinson argues that its ethical obligations under Rule 4-1.6 of the Florida Rules of Professional Conduct prevent it from complying with the Subpoena. But Rule 4-1.6, by its own terms, does not apply to documents sought via subpoena. This Rule generally proscribes lawyers from voluntarily disclosing "information relating to [the] representation of a client … unless the client gives informed consent." Fla. R. Prof'l Conduct 4-1.6(a). The official Comment to this Rule clarifies that it applies only "in situations *other than those* where evidence is sought from the lawyer *through compulsion of law*." *Id.*, cmt. (emphases added). In other words, Rule 4-1.6 does not apply when evidence is sought in court-sanctioned discovery. Indeed, Vinson's own authorities make clear that "[w]hen under compulsion of a subpoena, the lawyer acts ethically by *complying with the subpoena* as to any information sought that is not privileged."[7] Fla. Bar Ethics Op. 10-3, 2011 WL 6842635, at *3 (Feb. 1, 2011) (emphasis added) (cited by Mem. at 5). That is why courts have repeatedly rejected objections based on Rule 4-1.6 where the information is sought in discovery. *See Vasallo v. Bean*, 208 So. 3d 188, 189 (Fla. Dist. Ct. App. 2016) (rejecting argument that lawyer should not answer questions at deposition based on Rule 4-1.6); *see also Smith v. Powder Mountain, LLC*, 2009 WL 10698489, at *8-9 (S.D. Fla. Nov. 9, 2009) (compelling attorneys to answer interrogatories and collecting cases). This Court should likewise reject

---

[7] Nothing the Subpoena seeks is privileged because it is limited to documents that have already been exchanged with third parties.

Vinson's attempt to escape compliance with the Subpoena based on Rule 4-1.6.

Second, Vinson speculates that "it is *possible* that *some* of the documents requested by the Subpoena *may* be subject to confidentiality requirements imposed by the asbestos trusts to which it assisted its clients in submitting claims." Mem. at 8 (emphases added). Vinson fails to identify a single confidentiality requirement that actually applies to any of the documents Honeywell seeks, rendering this argument moot. Vinson's reliance on the unpublished case *In re Bestwall LLC*, 2021 WL 2209884 (D. Del. June 1, 2021), *appeal pending*, No. 21-2263 (3d Cir.), does not salvage this hypothetical. There, Bestwall, a debtor in a pending Chapter 11 bankruptcy, issued a subpoena to a claims processing facility seeking claimant documents—not to the claimants or their law firms themselves, as here. Specifically, the debtor sought "electronically stored data concerning any of Bestwall's roughly *15,000* settled mesothelioma claimants who also filed a claim against" another asbestos trust that used the claims processor that had been subpoenaed. *Id.* at *2 (emphasis added). Several trusts moved to quash the subpoena based on "court-approved confidentiality provisions of the TDPs" of those trusts. *Id.* at *3. The court noted that the information sought was already subject to confidentiality procedures, which another judge in the district had implemented in response to a previous motion that also addressed documents of those trusts. *See id.* at *6-7. Because the subsequent subpoena did not incorporate those protections, the court quashed the subpoena "*without prejudice* to Bestwall's right to seek reissuance of the subpoenas … consistent with the protections

afforded by the Bankruptcy Court's" earlier decision. *Id.* at *7 (emphasis added).

Here, unlike *Bestwall*, the Subpoena was issued to the claimants' law firm seeking claimants' *own* documents, which the law firm filed on their behalf. The Subpoena was not issued to some third-party claims processor, who received the documents from the claimants pursuant to some confidentiality provision with the claimant. Producing one's *own* documents in response to a subpoena does not trigger the same confidentiality concerns that could be triggered when a third party is asked to produce them. And, as explained above, a law firm is permitted to produce its clients' non-privileged documents in response to a subpoena.

Even if this Court were inclined to impose confidentiality provisions *sua sponte* similar to those in Bestwall, they are not necessary here. Judge Agresti has entered a protective order that will govern the production of documents in response to the Subpoena. *Honeywell v. NARCO Trust*, Adv. Proc. No. 21-2097, Dkt. 123, § 4.1 (Bankr. W.D. Pa. Nov. 18, 2021).[8] The protective order does not permit Honeywell to use the information sought by the Subpoena outside the context of the 2021 NARCO Litigation, and requires that the material be destroyed when the action concludes. *Id.* § 4.1. The protective order also includes an "attorneys' eyes only" provision to give heightened protection to particularly sensitive documents. *Id.* § 1.2. Thus, unlike Bestwall, here the Subpoena incorporates the protections of the protective order in place. Vinson's concerns about privacy are thus adequately addressed and no additional confidentiality

---

[8] *See* Adv. Proc. No. 21-2097, Dkt. 143 (Bankr. W.D. Pa. Dec. 2, 2021) (entering protective order).

provisions are required. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2018 WL 11268486, at *4 (M.D. Fla. Aug. 2, 2018) (granting motion to compel in part because privacy concerns over customer identifying information would be "alleviated" by the Amended Protective Order agreed to by the parties).

## IV.   THE SUBPOENA DOES NOT PLACE AN UNDUE BURDEN ON VINSON

Beyond its baseless confidentiality objections, Vinson also does not carry its burden to show that producing these materials would be unduly burdensome. *See Gov't. Emps. Ins. Co. v. Merced*, 2021 WL 2291325, at *2 (M.D. Fla. June 4, 2021). Vinson barely contests the "relevance [and] the requesting party's need for the documents," and as shown above, their relevance and Honeywell's need is clear. *Am. Airlines*, 2012 WL 2116349, at *2 (internal quotation marks omitted). Vinson's single burden argument focuses on the costs associated with responding to the Subpoena in the time requested, but Vinson's argument fails.

Vinson claims the Subpoena is unduly burden because responding to the Subpoena will require 262.5 hours of work by its lead paralegal. Mem. at 10-11. These statements can be disregarded out-of-hand because a "counsel's unsworn allegations do not provide a basis from which [a] Court can find that the documents requested places an undue burden" on the subpoena recipient. *Wilson v. Jackson Nat'l Life Ins. Co.*, 2017 WL 10402565, at *3 (M.D. Fla. June 26, 2017); *see also Breland v. Levada EF Five, LLC*, 2015 WL 12995098, at *6 (S.D. Ala. Apr. 30, 2015) ("Miller has not submitted any affidavits and, as a consequence, this Court has no basis to find that producing the documents ... will be particularly time

consuming or costly....”). But even if credited, these statements do not establish an undue burden.

Honeywell's Subpoena is not directed at all Vinson claimants, or even to all Vinson claimants that were paid by the Trust. It is directed to a representative subset of Vinson claimants that were paid by the Trust. Moreover, the Requests are not overly broad and do not seek any and all documents provided to any asbestos trust—they are targeted to "allegations of exposure" submitted to asbestos trusts (which are typically a few pages each). Ex. 1 at Sched. A. Nor do they seek entire litigation files, privileged documents, or medical records. Rather, they seek the complaints, depositions, interrogatory responses, and affidavits claimants provided to their adversaries in the litigations. *Id.*

Despite the fact that the Subpoena as written is targeted, Honeywell proposed limiting its scope—first to 100 claimants and then to 65, which Honeywell believes is the minimum number that would still constitute a sufficient sample of Vinson claimants. Knight Decl. ¶ 5. These limitations would reduce Vinson's time to comply with the Subpoena (using its own unsworn calculations) to 85.3 hours, which roughly translates to two out of Vinson's five paralegals working for one week.[9] If Vinson had adequately met-and-conferred, Honeywell could have reduced this burden even more by limiting the types of documents that would be responsive to the Subpoena, as Honeywell has done with other

---

[9] Vinson's website lists five paralegals on staff. *See* https://vinsonlawoffice.com/staff/ & https://vinsonlawoffice.com/supervisors/ (both last visited December 6, 2021).

subpoenaed firms. *Id.* ¶ 4. Honeywell has also offered to extend Vinson's time to produce responsive documents until the end of December, which is in line with similar offers Honeywell has made to other firms it has subpoenaed. *Id.* ¶ 5. Given that Vinson has recovered more than $3.7 *million* from the Trust—a figure that does not include other recoveries Vinson has obtained for these clients from other trusts—a single week's work by two paralegals does not present an undue burden.

Vinson also argues that "[t]he subpoenaed party need only show compliance would substantially disrupt its normal business operations" to prevail on its motion to quash. Mem. at 10 (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003)). But the case Vinson cites says nothing that supports this proposition, and the court there largely denied the motion to quash it was considering—exactly what this Court should do here. *See Goodyear*, 211 F.R.D. at 664-65.

Vinson has not cited a single case suggesting that an entity that has collected millions of dollars from a party, and whose conduct is directly at issue in the underlying complaint, can avoid compliance with a subpoena because it would take a week to respond. That is not the law, and the Court should reject Vinson's unsupported burden objections.

## V.   THE MOTIONS TO COMPEL AND QUASH SHOULD BE TRANSFERRED

While this Court can itself grant Honeywell's Motion to Compel and deny Vinson's Motion to Quash, Honeywell respectfully submits that Judge Agresti in the bankruptcy court is much better situated to rule on these Motions and to do so

in an expedited fashion. Absent a transfer, there is a serious risk of conflicting rulings concerning the relevance of the documents sought by the Subpoena—from this Court and from the federal court in Washington, DC, before which Honeywell has moved to compel a second firm's subpoena (and from which Honeywell has similarly requested a transfer). Knight Decl. ¶ 6. The Trust has already filed a motion for a protective order before Judge Agresti, in which it challenges the relevance of Honeywell's Subpoena to Vinson, as well as more than a dozen effectively identical subpoenas Honeywell has issued to other large filers of claims. Dkt. 1-2. Judge Agresti has already set a hearing on the Trust's motion for December 13. *See Honeywell v. NARCO*, Adv. Proc. No. 21-2097, Dkt. 128 (Bankr. W.D. Pa. Nov. 23, 2021). The "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014); *see also, e.g.*, *Royal Crest Dairy, Inc.*, 2020 WL 8996580, at *2 (transfer will "help avoid inconsistent rulings"); *Galloway v. Martorello*, 2019 WL 763590, at *2 n.1 (M.D. Fla. Feb. 21, 2019) (granting transfer as subpoenas in multiple district courts had already resulted in inconsistent rulings). Judge Agresti should have the opportunity to rule on Honeywell's Motion to Compel, just as he is already ruling on the Trust's motion for a protective order to avoid different courts reaching different conclusions on the relevance of the same documents. And, because relevance is a factor in determining "undue burden," that issue should be decided by Judge Agresti too.

Furthermore, Judge Agresti's long history overseeing this dispute puts him

in the best position to decide the issues raised by Honeywell's Motion. Judge Agresti presided over the 2015 evidentiary hearing, where he observed that the Trust is "unique, or at least highly unusual, among asbestos-related trusts." *In re NARCO*, 542 B.R. at 353. The documents sought by the Subpoena relate directly to issues that were the subject of the 2015 evidentiary hearing, and will be at issue in the May 2022 hearing in this action. Disputes that are "fact intensive and specific ... [r]equire considerable discovery ... [and t]hese complexities and commonalities make resolution of these cases by a single court preferable to litigation in multiple courts." *NeJame Law, P.A.*, 2016 WL 1599831, at *6. The sheer size, complexity, and unique nature of the NARCO bankruptcy and 2021 NARCO Litigation thus weigh decisively in favor of transfer. *See Duck v. S.E.C.*, 317 F.R.D. 321, 325 (D.D.C, 2016) (granting motion to transfer "in light of the complex nature of the underlying action[] and the significant involvement" of the issuing court "in the action to date" that has been pending for four years).

The 2021 NARCO Litigation is also likely to be disrupted if Honeywell's Motion is not transferred. Judge Agresti has set an expedited schedule for this litigation, with discovery closing on March 7, 2022, and trial beginning on May 23, 2022. *See Honeywell v. NARCO Trust*, Adv. Proc. No. 21-2097, Dkt. 119 at 3-5 (Bankr. W.D. Pa. Nov. 5, 2021). The documents sought by the Subpoena are particularly relevant for Honeywell's expert reports, which must be served on February 9, 2022. *Id.* at 3. Time is short, and "the Issuing Court is more than able to act swiftly to insure that discovery attendant to the litigation pending there is

managed in a way that comports with the deadlines already established by the Issuing Court." *In re Caesars Ent. Operating Co.*, 558 B.R. 156, 159 (W.D. Pa. 2016); *see also In re K.M.A. Sunbelt Trading Co.*, 2017 WL 2559790, at *1-2 (M.D. Fla. June 13, 2017) (granting motions to transfer and compel in part because of "impending deadlines as well as the trial schedule").

In contrast, Vinson will not suffer prejudice from the Motion being heard by Judge Agresti. "Transferring a *motion* to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice." *Wultz*, 304 F.R.D. at 45. Even if there is argument on Honeywell's Motion to Compel, Judge Agresti has a standing policy to allow attorneys and parties to appear by telephone or Zoom at all non-evidentiary hearings.[10] Vinson will not need to retain new counsel as its attorneys in this district "may file papers and appear on the motion as an officer of the issuing court." Fed. R. Civ. P. 45(f). Procedures such as these were specifically contemplated to "participate without great burden" from other states. *In re K.M.A. Sunbelt*, 2017 WL 2559790, at *2 (granting motion to transfer and compel based in part on ability to participate in hearings by telephone).

## VI.   THE COURT SHOULD EXPEDITE VINSON'S PRODUCTION

Finally, if Honeywell's Motion to Transfer is not granted, this Court should expedite the production of documents by Vinson. The Bankruptcy Court for the

---

[10] *See* Updated Notice of Temporary Modification of Appearance Procedures Before Judge Thomas P. Agresti, *available at* https://tinyurl.com/AgApp.

Western District of Pennsylvania has set a highly expedited schedule for discovery, dispositive motions, and trial. Under that schedule, expert reports are due to be exchanged by February 9, 2022. In order for Honeywell's expert to make use of the Requested Documents, those documents must be produced by (at the latest) December 29, 2021—six weeks before the expert report deadline.

District courts have "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). As explained above, the law firm will suffer no undue burden if it is ordered to produce the Requested Documents and Honeywell will be severely prejudiced if it is forced to litigate the 2021 NARCO Litigation without the Requested Documents. It is therefore with good cause that Honeywell asks the Court to expedite the law firm's production of documents.

## CONCLUSION

Honeywell respectfully requests that the Court grant Honeywell's Motions to Expedite and Transfer; alternatively, Honeywell respectfully requests that the Court grant Honeywell's Motion to Compel and deny Vinson's Motion to Quash.

## CERTIFICATE OF CONFERENCE

Pursuant to Rule 37(a)(1) and Local Rule 3.01(G), the undersigned counsel for Honeywell, certifies that he has in good faith conferred with counsel for Vinson via telephone on November 22 and December 6, 2021 in an effort to resolve this dispute without court action. The parties have been unable to reach a resolution.

*/s/ Guyon Knight*
Guyon H. Knight, Esq.

25

Dated: Tampa, FL
December 6, 2021

/s/ Eric J. Partlow

Eric J. Partlow, Esq.
Florida Bar No. 0556531
Primary: Eric.Partlow@arlaw.com
ADAMS AND REESE LLP
101 E. Kennedy Blvd., Suite 4000
Tampa, FL 33602
(813) 402-2880 (Telephone)
(813) 402-2887 (Facsimile)

*Attorneys for Honeywell International Inc.*